Filed 12/30/22  In re G.T. CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re G. T., a Person Coming Under the Juvenile Court Law. | B316544, B318898 (Los Angeles County Super. Ct. No. 20LJJP00490) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>THERESA P.,<br><br>     Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Stephanie M. Davis, Temporary Judge.  Dismissed in part and affirmed in part.

Megan Turkat Schirn, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Interim County Counsel, Kim Nemoy, Assistant County Counsel, and Jessica S. Mitchell, Deputy County Counsel, for Plaintiff and Respondent.

———————————

The Los Angeles County Department of Children and Family Services (DCFS or the agency) initiated juvenile dependency proceedings concerning G.T., who at that time was seven years old, based on his mother's substance abuse.[1] The juvenile court sustained the dependency petition, removed G.T. from his mother, denied her family reunification services on account of mother's failure to reunify with G.T.'s two older siblings who had been removed from her custody because of her substance abuse, and scheduled a hearing to determine G.T.'s permanent placement.

Mother filed a petition pursuant to Welfare and Institutions Code[2] section 388 to set aside the juvenile court's ruling denying her reunification services, arguing, inter alia, that after the court issued that order, mother had become sober and participated in substance abuse programs. The court held a hearing on the petition at which mother testified, and thereafter denied the petition, appointed G.T.'s maternal aunt as his legal guardian, permitted mother to have monitored visits with G.T., and terminated jurisdiction.

On appeal, mother contends the juvenile court erroneously inferred from her use of medication to manage withdrawal

---

[1] The identity of G.T.'s father is unknown.

[2] Undesignated statutory citations are to the Welfare and Institutions Code.

2

symptoms that she had failed to establish she was no longer abusing substances.  We decline to resolve this issue.  The order denying the petition indicates the court found that even if mother had established her recent sobriety, the circumstances had not changed sufficiently to show that delaying implementation of G.T.'s permanent plan (i.e., legal guardianship by G.T.'s maternal aunt) by awarding mother reunification services was in G.T.'s best interest.

We conclude the juvenile court did not abuse its discretion in denying mother's section 388 petition given mother's 25-year history of substance abuse; her recent arrest in another state for possessing methamphetamine and marijuana while she was in a drug treatment program; the fact that G.T.'s request to be reunified with his mother stemmed from his apparent desire to act as her caretaker; and G.T.'s interest in permanence and stability in his new home with his maternal aunt and his older brother.

Finding no error, we affirm the order denying mother's section 388 petition.  Additionally, we dismiss as abandoned mother's appeal of the orders denying her subsequent section 388 petitions.

## PROCEDURAL BACKGROUND[3]

We summarize only those aspects of the procedural history that are relevant to our disposition of the instant appeals.

---

[3] We derive part of our Procedural Background from undisputed portions of the parties' appellate briefing and assertions DCFS makes in its respondent's brief to which mother does not respond in her reply.  (See *Artal v. Allen* (2003) 111 Cal.App.4th 273, 275, fn. 2 (*Artal*) [" '[B]riefs and argument . . . are reliable indications of a party's position on the

On August 4, 2020, DCFS filed a juvenile dependency petition concerning G.T., who was seven years old at that time. In the petition, the agency asserted jurisdiction under section 300, subdivisions (b)(1) and (j).

In support of jurisdiction, the petition alleged the following: "[G.T.'s] mother . . . has a history of substance abuse and is a current abuser of cocaine, marijuana, opiates, benzodiazepines, oxycodone, hydrocodone, and Dilaudid, which renders the mother incapable of providing regular care of the child. On prior occasions, the mother was under the influence of cocaine, marijuana, opiates, benzodiazepines, oxycodone, hydrocodone, and Dilaudid, while the child was in the mother's care and supervision. On 06/27/2020, the mother had a positive toxicology screen for cocaine, marijuana, opiates, benzodiazepines, and oxycodone. On 07/02/2020, the mother had a positive toxicology screen for marijuana metabolites and hydrocodone. The child's [two older] siblings . . . are prior Dependents of the Juvenile Court and received Permanent Placement Services due to the mother's substance abuse. Such substance abuse by the mother endangers the child's physical health and safety and places the child at risk of serious physical harm[ and] damage . . . ."[4]

---

facts as well as the law, and a reviewing court may make use of statements therein as admissions against the party.' "]; *Rudick v. State Bd. of Optometry* (2019) 41 Cal.App.5th 77, 89–90 [concluding that the appellants made an implicit concession by "failing to respond in their reply brief to the [respondent's] argument on th[at] point"].)

[4] Indeed, according to the detention report filed on September 15, 2020, mother's adult daughter told the agency that

The juvenile court later detained G.T. from mother, and G.T. was placed with his maternal aunt. Maternal aunt is the legal guardian of one of the two older siblings identified in the dependency petition, to wit, an older brother of G.T. with whom mother failed to reunify in a prior dependency proceeding.

On October 20, 2020, the juvenile court sustained the dependency petition and scheduled a separate disposition hearing. At the November 23, 2020 disposition hearing, the court declared G.T. a dependent; removed him from mother's custody; denied mother family reunification services pursuant to section 361.5, subdivision (b)(10);[5] and scheduled a section 366.26 hearing to devise a permanent plan for G.T.[6]

On August 16, 2021, mother filed a section 388 petition requesting "[t]he child be returned to mother's care; or Family

---

hospital staff informed her that mother's name was "on a 'list' for people who abuse medication."

[5] As pertinent here, section 361.5, subdivision (b)(10)(A) provides: "Reunification services need not be provided to a parent . . . when the court finds, by clear and convincing evidence, any of the following: [¶] . . . [¶] That the court ordered termination of reunification services for any siblings or half siblings of the child because the parent . . . failed to reunify with the sibling or half sibling after the sibling or half sibling had been removed from that parent . . . and that, according to the findings of the court, this parent . . . has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from that parent . . . ." (§ 361.5, subd. (b)(10)(A).)

[6] (See *In re Elizabeth R.* (1995) 35 Cal.App.4th 1774, 1788 [indicating that the purpose of a section 366.26 hearing is to "devise a permanent plan"].)

Reunification Services be reinstated; or mother's visits . . . be unmonitored and/or liberalized." In the petition, mother alleged the following changes had occurred since the November 23, 2020 disposition hearing: "Mother has been focusing on her sobriety. Mother has completed Parenting Classes, a Substance Use Disorder (SUD) at Penny Lane, as well as at Tarzana Treatment Center. Mother is consistently testing weekly, and participating in Group and individual counseling. Mother has regularly visited with her son, and she has stable housing." The court thereafter scheduled a hearing on the section 388 petition for October 22, 2021, and continued the section 366.26 hearing to that date as well.

On October 22, 2021, the juvenile court held a hearing on mother's section 388 petition at which mother testified. On October 29, 2021, the court denied the section 388 petition, appointed maternal aunt as G.T.'s legal guardian, authorized mother to have weekly monitored visitation, and terminated jurisdiction. Later that day, mother appealed the orders denying her section 388 petition, establishing a legal guardianship for G.T., and terminating jurisdiction.

On November 9, 2021, mother filed her second section 388 petition, wherein she requested that the juvenile court remove G.T. from maternal aunt's home or return him to mother's custody. On December 3, 2021, mother amended her section 388 petition to ask the court to reopen the case and provide her with additional time to reunify with G.T. On February 23, 2022, mother filed yet another section 388 petition, which sought an order returning G.T. to her custody, granting her family reunification services, or authorizing her to have unmonitored and overnight visits.

On February 23, 2022, the juvenile court denied the section 388 petition that mother had filed earlier that day. On February 28, 2022, the court denied mother's other pending section 388 petition. On March 1, 2022, mother filed a notice of appeal of the February 28, 2022 ruling. On March 7, 2022, mother amended the March 1, 2022 notice of appeal to indicate that she sought review of the rulings issued on February 23 and 28, 2022.

## STANDARD OF REVIEW

"Section 388 provides for modification of juvenile court orders when the moving party presents new evidence or a change of circumstances and demonstrates modification of the previous order is in the child's best interests." (*In re Samuel A.* (2020) 55 Cal.App.5th 1, 6–7.) "Generally, the petitioner must show by a preponderance of the evidence that the child's welfare requires the modification sought." (*In re A.A.* (2012) 203 Cal.App.4th 597, 612 (*A.A.*).) " 'In determining whether the petition makes the necessary showing, the court may consider the entire factual and procedural history of the case.' [Citation.]" (*In re Mia M.* (2022) 75 Cal.App.5th 792, 812.)

"Not every change in circumstance can justify modification of a prior order. [Citation.] The change in circumstances must relate to the purpose of the order and be such that the modification of the prior order is appropriate." (*A.A.*, *supra*, 203 Cal.App.4th at p. 612.) "[A] section 388 petition seeking reinstatement of reunification services or return of the child will necessarily involve a parent who has made mistakes sufficient to support termination of services at some point in the past. The question must be whether the changes the parent made since then are substantial enough to overshadow that prior

7

determination, such that reunification is now in the child's best interests." (*In re J.M.* (2020) 50 Cal.App.5th 833, 848 (*J.M.*).) " 'A petition which alleges merely changing circumstances and would mean delaying the selection of a permanent home for a child to see if a parent . . . might be able to reunify at some future point[ ] does not promote stability for the child or the child's best interests. [Citation.] " '[C]hildhood does not wait for the parent to become adequate.' " ' [Citation.]" (*In re Mary G.* (2007) 151 Cal.App.4th 184, 206 (*Mary G.*).)

"The [section 388] petition is addressed to the sound discretion of the juvenile court, and its decision will not be overturned on appeal in the absence of a clear abuse of discretion." (*A.A.*, *supra*, 203 Cal.App.4th at p. 612.) Under that standard, "[t]he appellate court ' "will not disturb [a] decision unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations]." ' [Citation.]" (See *Mary G.*, *supra*, 151 Cal.App.4th at p. 205; see also *In re M.L.* (2012) 205 Cal.App.4th 210, 228 ["A review for abuse of discretion must be highly deferential to the decision maker[,] . . . and requires a showing that the decision was 'so irrational or arbitrary that no reasonable person could agree with it.' "].) In reviewing " 'the *factual basis* for an exercise of discretion,' " "a reviewing court should 'not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts[,]' " and " ' " '[w]hen two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' " ' [Citations.]" (See *In re Caden C.* (2021) 11 Cal.5th 614, 640–641 (*Caden C.*).)

Additionally, "[t]he juvenile court's orders are 'presumed to be correct, and it is appellant's burden to affirmatively show error.' [Citations.] ' "Appellate briefs must provide argument and legal authority for the positions taken." [Citation.] "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." ' [Citation.]" (*In re J.F.* (2019) 39 Cal.App.5th 70, 79.)

## DISCUSSION

As we noted in our Procedural Background, mother appealed the October 29, 2021 order denying her initial section 388 petition and the February 2022 orders denying her subsequent section 388 petitions. Apart from her challenge to the order denying her first section 388 petition, mother does not contest the validity of the juvenile court's October 29, 2021 orders appointing a legal guardian and terminating jurisdiction. We first address mother's appeal of the October 29, 2021 denial of her initial section 388 petition, then we discuss her appeal of the February 2022 orders.

### A.    Mother Fails to Establish the Juvenile Court Erred in Denying Her First Section 388 Petition

Although in her initial section 388 petition mother sought the return of G.T. to her care, unmonitored or liberalized visits with the child, and family reunification services, on appeal, she contests only the juvenile court's denial of her request for reunification services.[7] Mother's principal challenge to this

---

[7] Although mother asserts at one point in her opening brief that "the issue was whether the juvenile court abused its

ruling is that the court erroneously inferred from mother's use of Suboxone that she "had not stopped taking opioids and therefore failed to show she had maintained sobriety to show changed circumstances." Specifically, mother contends "[t]here is no evidence in the record, medical or otherwise, to support the court's conclusion that the use of [S]uboxone means a patient is 'still on opioids' when that medication is prescribed through a [medication assisted treatment] program." Mother insists that Suboxone is a medication used to treat drug withdrawal symptoms.

We need not decide whether the juvenile court erroneously found that mother failed to establish her sobriety because the court's order denying her petition does not hinge on that conclusion. Admittedly, in the course of rendering its decision, the court did find that mother was "still on the opioids," the court doubted whether "a competent treating physician" had in fact decided to allow her to use the opioids "as part of her treatment program," and the court "question[ed]" whether the medication assisted treatment (MAT) program was "the best and most effective treatment for the mother under the circumstances . . . ." Nevertheless, the court also observed that it "ha[d] to consider the chronic, long-standing history of addiction suffered by the mother" and found, "based on the evidence presented, that the mother ha[d] shown, at best, changing circumstances." The juvenile court further ruled that "the facts do not support the conclusion that returning or offering the mother reunification

discretion [in] denying a hearing on mother's [first] petition," this appears to be a typographical error because she admits elsewhere in her briefing that "the juvenile court ordered a hearing on the petition."

10

services is in the minor's best interest." Liberally construing the juvenile court's statements, as we must, we conclude the court had found that, even if it were to credit mother's evidence of sobriety, she nonetheless failed to show the circumstances had changed to such a degree that granting her reunification services was in G.T.'s best interest.[8] As we explain below, mother fails to establish the court acted in an arbitrary, capricious, or patently absurd manner in arriving at that conclusion.

In assessing a parent's section 388 petition for an order granting reunification services, "a court must perform a . . . nuanced best interests analysis" that takes into account " '(1) the seriousness of the problem which led to the dependency, and the reason for any continuation of that problem; (2) the strength of relative bonds between the dependent children to both parent and caretakers,' taking into account 'any interest of the child in preserving an existing family unit, no matter how, in modern parlance, "dysfunctional" ' and 'the complexity of human existence'; and (3) the nature of the changed circumstances and the reason a change was not made sooner." (See *J.M.*, *supra*, 50 Cal.App.5th at pp. 847–848, italics omitted.)

We address the first and third factors together because they overlap in this case. (See, e.g., *J.M.*, *supra*, 50 Cal.App.5th at p. 848 [noting that these two factors can be "closely related" to each other].) Regarding the seriousness of the problem that led to the dependency case, the juvenile court sustained a jurisdictional allegation that mother's "substance abuse . . .

---

[8] (See *In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133 ["A judgment or order of a lower court is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness."].)

endangers the child's physical health and safety and places the child at risk of serious physical harm . . . ." In sustaining this allegation, the court also found that G.T.'s two older siblings "are prior Dependents of the Juvenile Court [who] received Permanent Placement Services due to the mother's substance abuse." Although the court advised mother of her right to seek writ relief from the ensuing dispositional order that set a section 366.26 hearing, mother failed to do so.[9] Consequently, mother waived her right to challenge these jurisdictional findings.[10]

Concerning the nature of the changed circumstances, mother asserts she "provided substantial evidence of maintaining sobriety while participating in medication-assisted treatment," including her multiple negative results for drug tests administered after April 14, 2021, her completion of a substance

---

[9] We, sua sponte, take judicial notice of mother's notice of intent to file a writ petition vis-à-vis the dispositional order, along with the appellate docket relating thereto, which shows that the proceedings were terminated after mother failed to file any such writ petition. (Evid. Code, §§ 452, subd. (d), 459.)

[10] As our colleagues in Division Two of the Fourth District explained: "Failure to appeal from an appealable dispositional order waives any substantive challenge to the jurisdictional findings. [Citation.] . . . [¶] . . . 'When the . . . order [setting a section 366.26 hearing] is made at the dispositional hearing,' . . . . [i]t could be reviewed, if at all, only by way of a writ petition. [Citations.] [¶] Much like failure to appeal from an appealable dispositional order, failure to take a writ from a nonappealable dispositional order waives any challenge to it. [Citations.] But there is one exception to this rule. The juvenile court is required to advise a parent of the writ petition requirement." (See *In re Athena P.* (2002) 103 Cal.App.4th 617, 624–625.)

abuse treatment program, and her participation in, and full compliance with, a MAT program.  Yet, mother concedes she testified that "[s]he has struggled with substance abuse for 25 years" and that she became sober no earlier than April 16, 2021, which was approximately six months prior to the hearing on her petition.  (See *Artal*, *supra*, 111 Cal.App.4th at p. 275, fn. 2 [holding that a reviewing court may construe a statement in a brief as an admission against the party making it].)  Further, the section 366.26 report filed on March 5, 2021 and mother's testimony at the section 388 hearing show that in March 2021, while mother was in the midst of one of her drug treatment programs, mother was arrested in Indiana for possession of methamphetamine, marijuana, and cocaine, thus illustrating the seriousness of her addiction to substances at that time.  Given these facts, it was not unreasonable for the juvenile court to question whether mother would be able to maintain her sobriety upon being afforded family reunification services.  (Cf. *In re Cliffton B.* (2000) 81 Cal.App.4th 415, 420–421, 423–424 [upholding the denial of a father's section 388 petition for reinstatement of reunification services because, given the father's long history of drug use, "200 days [of sobriety] was not enough to reassure the juvenile court" that he would not relapse].)

With respect to the second factor (i.e., the strength of the relative bonds between the child and the parent and the caretaker, respectively), mother argues that G.T. had been in mother's care since birth, G.T. told the agency that he wanted to reunify with mother, G.T. "was consistently happy to see mother and relatives confirmed there was a bond between mother and [G.T.]"  Mother also intimates that offering her reunification services would not undermine G.T.'s interest in permanency and

13

stability because G.T. "was not being adopted, mother continued to have visitation," and "maternal aunt . . . did not want adoption [because she wanted] to give mother a chance to 'get her act together' and get her son back."

Admittedly, the interim review report filed on September 9, 2021 shows G.T. told the agency "he want[ed] to return home to his mother." Per the report, G.T. asked, " 'Who's going to take care of her?' and [stated] 'I need to know she is okay, so she is not alone.' " Further, according to the detention report filed on September 15, 2020, G.T. informed the agency that on multiple occasions, he had accompanied his mother to the hospital in her quest for pain medicine, and the medical director for the county fire department disclosed that mother has requested transportation to the hospital to get opiates. The juvenile court could have reasonably inferred from this evidence that G.T.'s request to return home stemmed from his desire to act as a caretaker for mother, and that facilitating the return of an eight-year-old child to mother to assume that role would not have been in his best interest.[11]

---

[11] (See *Caden C.*, *supra*, 11 Cal.5th at pp. 640–641 [holding that " ' " '[w]hen two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court' " ' " under the abuse of discretion standard]; cf. *In re L.S.* (2014) 230 Cal.App.4th 1183, 1199–1200 [concluding that the beneficial parental relationship exception to the termination of parental rights was inapplicable, given that the minors did not have "a positive emotional attachment" to their parents because, inter alia, the minors' "desire to go home was due in part to . . . a need to act as caretakers for" the parents].)

Further, assuming arguendo mother is correct in asserting that G.T. "was emotionally attached to his mother and there was an acknowledged bond between them," mother overlooks the fact that denying her petition for reunification services would not have severed that bond. Specifically, in the interim review report filed on September 9, 2021, DCFS sought the appointment of a legal guardian—and not adoption—as G.T.'s permanent plan, and the agency sought to allow mother to continue to have monitored visits with the child. Because the juvenile court's docket indicates this was the last report filed by the agency prior to the hearing on mother's initial section 388 petition, there is no indication the denial of that petition had the potential to extinguish mother's relationship with G.T.[12]

We also note that the interim review report states G.T. had "been acclimating to life with his half-brother and maternal aunt," and that he had been "enroll[ed] in the local school." This evidence supports the conclusion that granting mother's petition would have disrupted a permanent and stable living environment for G.T. (See also *In re J.R.* (2022) 82 Cal.App.5th 569, 590, fn. 30 [" ' " 'Once reunification services are ordered terminated [by the juvenile court], the focus shifts to the needs of the child for permanency and stability.' " ' "].)

In light of the above-described evidence before the juvenile court, the court did not abuse its discretion in concluding that mother's recent sobriety did not establish that granting her reunification services would have been in G.T.'s best interest. (See *J.M.*, *supra*, 50 Cal.App.5th at p. 847 [holding that whether

---

[12] We, sua sponte, take judicial notice of the juvenile court's docket. (Evid. Code, §§ 452, subd. (d), 459.)

15

granting reunification services would be in the child's best interest is "the 'ultimate question' on [this type of] section 388 petition"].)

**B.    We Dismiss as Abandoned Mother's Appeal of the Orders Denying Her Subsequent Section 388 Petitions**

After she filed her opening brief, mother moved to consolidate her appeal of the order denying her initial section 388 petition with her appeal of the February 2022 orders denying her subsequent section 388 petitions. In her motion, mother asked this court to accept her previously-filed brief as her opening brief for both appeals. The presiding justice thereafter granted mother's motion and consolidated both appeals "for purposes of briefing, oral argument and decision." The order granting the motion provides that the opening brief mother had already filed "now applies to both cases."

At no point in her opening or reply briefs does mother challenge the February 2022 orders. We therefore dismiss as abandoned mother's appeal of those rulings. (*Uzyel v. Kadisha* (2010) 188 Cal.App.4th 866, 888, fn. 12 [dismissing an appeal from an order because the appellant abandoned his appeal by failing to challenge the order in his briefing].)

16

## DISPOSITION

We affirm the juvenile court's October 29, 2021 orders (a) denying mother's petition filed under Welfare and Institutions Code section 388, (b) appointing a legal guardian for G.T., and (c) terminating dependency jurisdiction. We dismiss as abandoned mother's appeal of the February 23, 2022 and February 28, 2022 orders denying her subsequent section 388 petitions.

NOT TO BE PUBLISHED.

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

WEINGART, J.